IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CONTRELL PLUMMER, # B-14235,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12-cv-908-MJR |
| | ) |
| **MENARD CORRECTIONAL CENTER,** | ) |
| **ROBERT M. DILDAY,** | ) |
| **UNKNOWN GRATHLER,** | ) |
| **DANA JAENKE,** | ) |
| **UNKNOWN KILPATRICK,** | ) |
| **STEPHEN M. BAKER,** | ) |
| **BEAU W. PURTLE,** | ) |
| **UNKNOWN PRANGE,** | ) |
| **UNKNOWN SEVERS,** | ) |
| **EDDIE C. RUMPH,** | ) |
| **TOMMY LAWLESS,** | ) |
| **BILLY J. BAKER,** | ) |
| **and UNKNOWN CRANK,** | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

This matter comes before the Court for review of Plaintiff's Second Amended Complaint[1] (Doc. 37) pursuant to 28 U.S.C. § 1915A. The Second Amended Complaint was prepared by counsel recruited by the Court to assist Plaintiff in identifying an unknown Defendant.

## I.  Background

Plaintiff, proceeding *pro se*, originally filed this action on August 10, 2011, as *Plummer v. IDOC, et al.*, Case No. 11-cv-682-MJR. At the time he filed this action, he was

---

[1] This pleading is entitled "First Amended Complaint," but should have been designated the Second Amended Complaint, as Plaintiff previously filed a *pro se* First Amended Complaint at Doc. 16.

incarcerated at Menard Correctional Center ("Menard"), serving a 40-year sentence for murder and an eight-year sentence for attempted murder. Plaintiff has since been transferred to Stateville Correctional Center (Doc. 25).

After screening the original complaint in Case No. 11-cv-682-MJR, this Court severed three of Plaintiff's unrelated claims into new actions, pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), on August 13, 2012 (Doc. 1). The instant case began with Plaintiff's claim against a single unknown Defendant he initially identified only as "Unknown 8 Gallery Officer" at Menard Correctional Center. Plaintiff alleged that this Defendant was deliberately indifferent to his serious medical needs, when the Officer failed to summon medical attention after Plaintiff experienced asthma-related breathing problems on September 7, 2010.

On September 28, 2012, the Court ordered Plaintiff to submit a First Amended Complaint identifying the unknown Gallery Officer by name, so the case could proceed (Doc. 6). After receiving two extensions of time to allow Plaintiff to pursue discovery, he filed his First Amended Complaint (Doc. 16) on March 4, 2013. However, he still had not been able to identify the Defendant.

On April 2, 2013, this Court granted in part Plaintiff's motions to appoint/recruit counsel, and appointed Catherine R. Grantham for the purpose of conducting discovery and filing a Second Amended Complaint, once the unknown Gallery Officer could be identified (Doc. 17). After filing deadlines passed and were extended, the Court entered a show cause order against counsel, directed her to submit monthly status reports, and *sua sponte* reinstated the Warden of Menard Correctional Center as a party for the purpose of responding to discovery requests (Docs. 26, 29). Counsel filed her status reports as directed, and filed the Second Amended Complaint, naming Menard Correctional Center and eight individual officers as

Defendants, on April 22, 2014 (Doc. 37). This amended complaint did not include the Menard Warden as a party. Meanwhile, Richard Harrington (the Menard Warden), by counsel, filed his Answer to the First Amended Complaint (Doc. 36) on April 7, 2014.

## II. The Second Amended Complaint (Doc. 37)

Each of the individual correctional officers named herein is described by his/her assignment to the "South Upper," "South Upper 8 Gallery," or "South Yard" area of Menard (Doc. 37, pp. 1-5). Plaintiff levels allegations against all the Defendants collectively, stating that they intentionally denied him immediate medical treatment and conspired to violate his constitutional rights (Doc. 37, p. 5). However, his statement of facts as to the specific events on September 7, 2010, reveal that Plaintiff made his request for medical assistance to only one of the Defendants on duty at that time, and that individual refused to summon medical help (Doc. 37, p. 7-8).

Plaintiff further alleges that Defendant Menard Correctional Center had an official policy, custom, or practice of failing to instruct, supervise, control, or discipline the individual Defendants, and the "policymakers of Defendant Menard Correctional Center" were deliberately indifferent to inmates' rights, thus causing the deprivations of Plaintiff's rights (Doc. 37, pp. 5-6). In addition to the constitutional claims, Plaintiff asserts violations of Illinois state law, and invokes this Court's supplemental jurisdiction to hear those claims.

Specifically, on September 7, 2010, Plaintiff informed the Menard Gallery 8 Officer that he was having problems breathing (Doc. 37, p. 7, ¶ 22). However, this officer failed to inform the Med-Tech, Sergeant, or Lieutenant that Plaintiff needed medical attention. Some 25 to 35 minutes later, the Med-Tech on duty happened to pass by Plaintiff's cell. Plaintiff told the Med-Tech about his symptoms, which included congestion for over eight days, coughing

spells, coughing up mucus, and profuse sweating (Doc. 37, p. 8).

The Med-Tech told the Gallery Officer (it is not clear whether this is the same individual who failed to call for help) that Plaintiff must go to the Health Care Unit (HCU) immediately. Once there, Plaintiff's lungs were tested and his peak flow was measured at between 210 and 220. According to the prison health care policy, asthma patients are to receive a breathing treatment if the peak flow level is under 300. Plaintiff was given a breathing treatment and 60 mg. of Prednisone. Following the breathing treatment, his peak flow rose to the 220-260 level. He was then released back to his housing unit. He alleges that this move constituted negligence on the part of the medical staff,[2] because his peak flow level had not been sufficiently increased (Doc. 37, p. 8).

Further, Menard has an ongoing pattern and practice of denying and delaying medical treatment for prisoners. Plaintiff has experienced numerous incidents of failure to treat his asthma-related breathing problems in a timely or effective manner, and has filed grievances complaining of this conduct (Doc. 37, p. 9). Menard Medical Director Dr. Fahim (who is not a Defendant herein) had previously determined that when Plaintiff was wheezing, he needed immediate treatment.

Based on these factual allegations, Plaintiff now asserts six separate counts for violations of his constitutional rights (Doc. 37, pp. 9-16). Each is summarized below and is titled as pled in the complaint:

**Count 1 – Violation of Civil Rights:** All Defendants were deliberately indifferent to Plaintiff's medical needs, on numerous occasions (including the September 7, 2010 incident) where they repeatedly refused to respond to his need for medical treatment and failed to give him proper medical care;

---

[2] None of the Defendants named herein are alleged to be medical providers responsible for administering breathing treatments or other medical care.

**Count 2 – Failure to Protect While in Custody:** One of the individual Defendants (named collectively in relation to this count) failed to protect Plaintiff when s/he deliberately denied him immediate medical care on September 7, 2010,[3] despite the fact that this Defendant knew or should have known that Plaintiff needed immediate care and that he faced a risk of harm;

**Count 3 – Conspiracy to Violate Plaintiff's Civil Rights:** All Defendants conspired together to violate Plaintiff's civil rights, by denying him immediate medical care on repeated occasions including the incident on September 7, 2010;

**Count 4 – Failure to Intervene and Prevent the Violation of an Inmate's Civil Rights:** All Defendants failed to intervene to prevent the violation of Plaintiff's civil rights on September 7, 2010, when Plaintiff was denied immediate medical care;

**Count 5 – Failure to Instruct, Supervise, Control and Discipline Officers:** All Defendants failed to instruct, supervise, control, or discipline officers who were responsible for obtaining medical care for inmates, which resulted in the denial of medical care to Plaintiff on September 7, 2010;

**Count 6 – Denial of Immediate Medical Attention:** All Defendants were notified of Plaintiff's need for immediate medical care on September 7, 2010, yet deliberately failed to obtain medical attention for him. This count specifically references the allegation that after Plaintiff was treated in the HCU, he was "negligently released" back to his cell despite the failure to bring his peak flow to the proper level (Doc. 37, ¶ 22; ¶ 56).

As relief, Plaintiff seeks monetary damages against Defendant Menard Correctional Center and each individual Defendant.

### III. Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff's claims against the individual Defendants in **Counts 1, 2, 3, 4, and 5** have sufficiently articulated

---

[3] In this count, Plaintiff specifically references paragraphs 21, 27, and 29 of the complaint. Paragraphs 21 and 29 describe the medical treatment Plaintiff received on September 7, 2010, after being moved to the HCU, thus the Court reads this claim as limited to the events on that date. Paragraph 27 states that the prison doctor determined that Plaintiff needs immediate treatment when he wheezes. Counts 3, 4, and 5 also specifically invoke paragraphs 21 and 29 regarding September 7, 2010.

violations of his civil rights under the Eighth Amendment, and shall receive further review. In addition, **Count 2** includes a potential claim for negligence under Illinois law.

However, Defendant "Menard Correctional Center" shall be dismissed from the action, because it is a division of a state government agency (the Illinois Department of Corrections). It is not a "state corporation" as alleged by Plaintiff, nor is it a municipality which might be subject to § 1983 liability if the constitutional deprivations were the result of the entity's official policy, custom, or practice. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). A specific prison or other division of the Illinois Department of Corrections, is not a "person" within the meaning of the Civil Rights Act, thus is not subject to a § 1983 suit for damages. *See Will*, 491 U.S. at 71.

**Deliberate Indifference - Counts 1, 2, 3, 4, and 5**

These claims are premised on one or more Defendants' deliberate indifference to Plaintiff's serious medical condition. In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard

of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error or negligence (and even, in the case of a medical provider, ordinary malpractice) is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff has sufficiently alleged that his asthma-related breathing impairment was an objectively serious medical condition. As for the subjective component of an Eighth Amendment claim, Plaintiff must ultimately demonstrate that the Defendant(s) consciously disregarded a known and substantial risk of serious harm. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

**Count 2**

Although Plaintiff names all the individual Defendants in connection with **Count 2**, the Court interprets this deliberate indifference and negligence claim to be directed against the single individual (previously described as the Gallery 8 Officer) who failed to act in response to Plaintiff's direct request for medical assistance on September 7, 2010. Further factual development will be necessary in order for Plaintiff to determine which of the individual Defendants was the recipient of that request.

**Count 3**

Under the intracorporate conspiracy doctrine, a § 1985 conspiracy claim "cannot

exist between members of the same entity. *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). Plaintiff has alleged that the individual Defendants are all members/employees of the same entity, the Menard Correctional Center. Therefore, the Defendants cannot be sued for conspiracy under §§ 1985 or 1986. *See id. See also Wright v. Ill. Dep't of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).[4]

However, a civil conspiracy claim may be cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). The complaint satisfies this standard for stating a civil conspiracy claim, as Plaintiff has alleged that the individual Defendants conspired to violate his Eighth Amendment right to receive adequate medical care, which resulted in his being denied care on September 7, 2010, and other occasions (Doc. 37, pp. 11-12). Accordingly, **Count 3** shall proceed at this time against the individual Defendant officers.

**Count 4**

In order for Plaintiff to prevail on his claim that the Defendants failed to intervene on September 7, 2010, to prevent the unconstitutional denial of medical care to him, Plaintiff will have to establish that the Defendants were aware of his breathing distress and request for help. Plaintiff's summary of the facts clearly states that he told only one Gallery 8 Officer about his symptoms. At this stage, however, dismissal pursuant to § 1915A is not appropriate, and this claim may proceed.

---

[4] While *Wright* focused on corporate managers, nothing in its reasoning precludes application of this doctrine to supervisors and subordinates in a government entity, as long as all are working in the entity's interest. *Id.* at 633.

**Count 5**

As noted above, Plaintiff cannot maintain a claim for damages against "Menard Correctional Center." The allegation in Count 5 of "failure to instruct, supervise, control and discipline officers" evokes the grounds under which a municipality may be liable in a civil rights claim. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("only where a failure to train reflects a 'deliberate' or 'conscious' choice" can a city, county, or other municipality "be liable for such a failure under § 1983."); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009) (to sustain claims against officials acting on behalf of a municipal agent, there must exist allegations that the actions were due to the agent's failure to train its personnel). However, these allegations are unavailing against a state agency such as Menard.

This count also suggests that at least some of the individual Defendants failed to properly train or supervise officers under their control regarding the proper handling of inmates' requests for medical assistance. There is no vicarious or supervisory liability in a § 1983 action. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001); *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). However, if a defendant directed or gave knowing consent to the conduct which caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation. *Chavez*, 251 F.3d at 652; *McPhaul v. Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may then be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville,* 266 F.3d at 740 (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

At this stage, the Court cannot discern whether any of the named Defendants might be subject to liability under the above standards. Therefore, Count 5 may proceed against the individual Defendants.

**Dismissal of Count 6 – Denial of Immediate Medical Attention**

This claim specifically refers to the paragraph (Doc. 37, ¶ 22) which states that Plaintiff was negligently released from the Health Care Unit after the medical staff treated him but failed to adequately raise his peak flow reading. Therefore, the Court understands this count to assert a deliberate indifference and negligence claim for the failure to provide continuing or sufficient treatment to Plaintiff *after he arrived* at the HCU.[5] However, Plaintiff fails to name any medical providers as Defendants in this action. There is no suggestion that any of the named Defendants, all correctional officers, were professional medical providers.

If a prisoner is under the care of prison medical professionals, a non-medical prison official "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to provide a gratuitous rescue service." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Here, the named Defendant officers, even if they were made aware of Plaintiff's peak flow readings, could not be expected to challenge the decision of the HCU staff to send Plaintiff back to his cell. They were entitled to rely on the medical provider's judgment that Plaintiff's condition had been adequately treated, and cannot be held liable for any misconduct on the part of the HCU staff.

For these reasons, **Count 6** shall be dismissed without prejudice.

---

[5] Otherwise, this claim would be duplicative of Count 2.

### IV. Disposition

COUNT 6 is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendant **MENARD CORRECTIONAL CENTER** is **DISMISSED** from this action with prejudice.

As to **COUNTS 1-5**, the Clerk of Court shall prepare for Defendants **DILDAY, GRATHLER, JAENKE, KILPATRICK, BAKER, PURTLE, PRANGE, SEVERS, RUMPH, LAWLESS, BAKER,** and **CRANK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 37), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Until Defendants appear, the show cause order and hearing (see Doc. 26, modified by Doc. 29) will remain pending before the undersigned Judge.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an

appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, with the exception of the show cause hearing, which shall remain before the undersigned Judge.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to

Plaintiff.  Local Rule 3.1(c)(1).

**IT IS SO ORDERED.**

**DATED: May 2, 2014**

s/ MICHAEL J. REAGAN
United States District Judge